SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

LAFAYETTE-BOYNTON APARTMENT CORP.,
NELSON MANAGEMENT GROUP, LTD., and
LBPR SERVICES, LLC

Index No.

**SUMMONS**

                Plaintiffs,

    -vs.-

DAVID LOPEZ,

               Defendant.
------------------------------------------------------------------x

To the above-named Defendant:

        **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** and required to answer the attached Verified Complaint of the Plaintiffs in this action and to serve a copy of your answer upon the attorneys for the Plaintiffs at the address stated below within twenty (20) days after the service of this Summons, exclusive of the date of service, or within thirty (30) days after service of this Summons, exclusive of the date of service, if not personally delivered to you within the State of New York.

        **PLEASE TAKE FURTHER NOTICE** that, should you fail to serve an answer to the attached Verified Complaint within the applicable time limitations stated above, a judgment may be entered against you, by default, for the relief demanded in the Verified Complaint.

        **PLEASE TAKE FURTHER NOTICE** that Plaintiffs designate New York County as the place of trial. The basis of venue is that the acts complained of in the attached Complaint occurred in whole or in part in New York County, New York.

- 2 -

Dated:    New York, New York  
          August 27, 2021

CLIFTON BUDD & DeMARIA, LLP  
*Attorneys for Plaintiffs*

By:    Stephen P. Pischl, Esq.  
350 Fifth Avenue 61st Floor  
New York, New York 10118  
(212) 687-7410 (tel)  
sppischl@cbdm.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

LAFAYETTE-BOYNTON APARTMENT CORP.,
NELSON MANAGEMENT GROUP, LTD., and
LBPR SERVICES, LLC

                       Plaintiffs,

     -vs.-

DAVID LOPEZ,

                       Defendant.
-----------------------------------------------------------------x

Index No.

**VERIFIED COMPLAINT**

*JURY TRIAL DEMANDED*

        Plaintiffs, Lafayette-Boynton Apartment Corp. ("Lafayette-Boynton"), Nelson Management Group, Ltd. ("Nelson Management"), and LBPR Services, LLC ("LBPR," and, collectively with Lafayette-Boynton and Nelson Management, "Plaintiffs"), by and through their attorneys, Clifton Budd & DeMaria, LLP, as and for their Verified Complaint in this action against defendant David Lopez ("Lopez" or "Defendant"), hereby plead and allege as follows:

## NATURE OF THE CLAIMS

        1.    Plaintiffs commence this civil action for compensatory, punitive and other monetary damages that proximately resulted from Lopez's egregious breach of his binding obligations pursuant to the Settlement Agreement and General Release (the "Agreement"), duly executed by Lopez on or about October 29, 2020, in which, among other promises, Lopez warranted and covenanted not to bring suit against Plaintiffs with any federal, state or local court.

        2.    Lopez, who had been employed by Lafayette-Boynton as a porter at a residential apartment building located in the Bronx (the "Property"), was terminated, effective October 22, 2020.

3. Certain building service workers at the Property, including Lopez, were represented by the Service Employees International Union, Local 32BJ (the "Union") in collective bargaining with Lafayette-Boynton.

4. Lopez grieved his termination but settled and withdrew his grievance prior to any hearing.

5. In the Agreement, which settled the termination grievance, duly executed on or about October 29, 2020, Lopez expressly agreed to a broad general release of all claims against his employer and other releasees, including all Plaintiffs in this action, and also unequivocally covenanted not to bring suit against the releasees.

6. Notwithstanding his binding covenant not to sue, without any prior notice to Plaintiffs and in a plain breach of the express terms of the Agreement, on or about January 31, 2021, Lopez, through counsel, instituted an action against Nelson Management and LBPR in the United States District Court for the Southern District of New York (the "District Court"), Case No. 1:21-cv-00865 (JMF) (the "Federal Action"), suing for alleged violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").

7. The Agreement, by its plain terms, forecloses the Federal Action, and Plaintiffs have been damaged by Lopez's blatant disregard for and violation of his binding release of claims and covenant not to sue.

8. Plaintiffs seek declarative and other equitable relief, including a declaration by this Court that Lopez's claims in the Federal Action are barred by the Agreement and a direction that Plaintiff honor the promises and covenants to which he agreed to be bound and that he seeks withdrawal of the Federal Action with prejudice.

9. Plaintiffs also seek compensatory damages attributable to Defendant's breach, including their costs incurred in defending themselves in the Federal Action, and punitive damages for Lopez's willful, deliberate breach of his promises and covenants.

## JURISDICTION AND VENUE

10. This action is brought under New York statutory and common law.

11. A substantial part of the acts or omissions complained of in this Complaint, including Defendant's filing of suit in breach of his express covenant not to sue, occurred in whole or in part in New York County, within the State of New York, and this Court is thus the appropriate venue for the commencement of this action.

## PARTIES

12. Lafayette-Boynton is a New York corporation with its principal place of business in Bronx, New York.

13. Nelson Management is a New York corporation with its principal place of business in Queens, New York.

14. LBPR is a Delaware corporation with its principal place of business in Queens, New York.

15. Lopez is an individual, over eighteen years old. Upon information and belief, at present and at all times relevant to this proceeding, Lopez has resided in Bronx, New York.

## FACTS

16. From approximately November 19, 2017, until October of 2020, LBPR employed Lopez as a porter at the Property, a residential housing complex located in Bronx, New York.

17. Lopez was terminated for cause, having been captured, on or about October 20, 2021, in the Property's security camera footage spending well over an hour during his regularly scheduled shift inside a resident's apartment.

18. Lopez's duties as a porter would not have given him occasion to enter a resident's unit. Instead, his responsibilities were limited to performing cleaning and maintenance tasks in common areas, such as sweeping and mopping floors and organizing refuse for collection.

19. Management's investigation into the incident concluded that Lopez had been performing an unauthorized, off-the-books "side job"—that is, a specific maintenance or repair task performed at the request of a resident at the Property, outside the staff's ordinary duties, often for compensation.

20. Not only was Lopez's side job performed in violation of management's express prohibition on such activity, but, because it occurred while he was on the clock, during Lopez's regularly scheduled shift, management was deprived of Lopez's services and his misconduct amounted to theft of company time.

21. Notably, Lopez had been previously suspended on two prior occasions for similar misconduct: once for gross dereliction of duty, on or about October 16, 2018, and a second time, on or about June 10, 2019, for avoiding his responsibilities by hiding in a locked room during his working hours.

22. Having concluded that Lopez stole company time to perform an unauthorized side job, and given his prior history of similar, related misconduct, Lafayette-Boynton terminated Lopez, effective October 22, 2020.

23. Through the Union, Lopez immediately grieved his termination.

24. Lopez, represented and counseled by a Union representative, the Union and Lafayette-Boynton collectively agreed to settle and resolve the grievance shortly thereafter, executing the Agreement, intended by its plain terms not only to fully resolve any claims concerning Lopez's termination and his employment with Lafayette-Boynton, but also to place strict limits on any future disputes between Lopez and his former employer.

25. Specifically, Paragraph 2 of the Agreement provides that, in consideration for his receipt of certain unpaid vacation time, to which Lopez expressly acknowledged he was not otherwise entitled to receive (*see* Agreement, ¶ 13), Lopez agreed to a broad general release of all claims against his former employer and the other releasees, including all Plaintiffs in this action, as follows:

> Lopez releases and discharges [Lafayette-Boyton] and its parent corporations, subsidiaries, divisions, and affiliated entities as well as each of the foregoing's respective officers, directors, agents, principals, members, shareholders, partners, employees, attorneys, administrators, heirs, successors and assigns (hereinafter referred to collectively as "Releasees") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever in law, admiralty, or equity, which against the Releasees, Lopez, Lopez's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Settlement Agreement and General Release ("Agreement"). This release and discharge includes, but is not limited to, the release and discharge of Lopez of the Releasees from any and all claims arising out of or in connection with Lopez's employment with the Company.

(Agreement, ¶ 2.)

26. Moreover, Lopez also expressly warranted not to file suit or seek damages against Plaintiffs, *whether relating to his termination grievance or for any other reason*, as plainly set forth therein:

> Lopez shall not institute any action, which exists or may accrue, against the Releasees with any federals [sic], state or local court or any administrative agency. Lopez also shall not accept any awards or settlement with respect to any action, complaint, charge, lawsuit or other proceeding against the Releasees, whether as a member of a class or otherwise. In the event Lopez institutes, is a party or is a member of a class that institutes any claim or action against the Releasees, Lopez agrees that his claims shall be dismissed or class membership terminated immediately upon presentation of this Agreement. Lopez shall execute any papers necessary to achieve this end.

(Agreement, ¶ 5.)

27. In addition, and to ensure compliance with the covenant not to sue, "in the event Lopez institutes […] any claim or action against the Releasees," Lopez further agreed that he "shall reimburse the Releasees for all legal fees, costs, and disbursements they incur in defending and obtaining the dismissal of such claims instituted with Lopez's consent." (Agreement, ¶ 5.)

28. As expressly provided in the Agreement, Lopez promised that, if he "engages in conduct prohibited by [*inter alia*] [P]aragraphs [2 and 5], […] Lopez will be liable to the Employer for monetary damages and other relief, including, but not limited to costs and attorney's fees." (Agreement, ¶ 9.)

29. As acknowledged in the Agreement, Lopez was provided with the opportunity to have twenty-one (21) days to review the Agreement and its terms, as well as

counseled, in writing, to consult with an attorney prior to executing the Agreement. (Agreement, ¶ 10.)

30. Lopez was represented by a competent advisor, his union representative, who also executed the Agreement on behalf of the Union. (*See* Agreement, p. 3.)

31. In addition, the Agreement also provided Lopez with seven days following his execution within which to revoke the Agreement, which would not become effective until seven days after he executed it. (Agreement, ¶ 11.)

32. Lopez acknowledge in writing that he understood the terms of the Agreement and was agreeing to the terms voluntarily and knowingly. Specifically, Paragraph 16 of the Agreement, to which Lopez agreed, states:

> Lopez agrees and acknowledges that he understands the terms of this Agreement. He agrees and acknowledges that he voluntarily enters into this Agreement and that he has had the opportunity to seek legal advice regarding the Agreement.

(Agreement, ¶ 16.)

33. Lopez duly executed the Agreement on or about October 29, 2020. (See Agreement, p. 3.)

34. Lopez did not revoke the Agreement within the seven-day revocation period provided for in Paragraph 11 of the Agreement, which became effective, by its own terms, no later than Thursday, November 5, 2020.

35. At all times following the Effective Date, Plaintiffs have honored all promises in the Agreement and otherwise fully performed and complied with the terms therein.

36. Approximately ninety days later, on or about January 31, 2021, Lopez, through counsel, instituted the Federal Action against Nelson Management and LBPR in the District Court, suing for alleged violations of the FLSA and the NYLL.

37. Upon information and belief, at no time prior to instituting the Federal Action did Lopez, whether through counsel or otherwise, give notice to any of the Plaintiffs of his intent to initiate the Federal Action.

38. In his Complaint in the Federal Action (the "Federal Complaint"), Lopez alleges that he was employed by plaintiffs LBPR and Nelson Management, from "on or about November 27, 2016 to on or about October 22, 2020" and claims that he was not appropriately paid for work performed during that period. (*See*, *e.g.*, Federal Complaint, ¶¶ 1-3.)

39. Lopez unequivocally covenanted in the Agreement not to institute an action against the Plaintiffs, all three of which are identified as Releasees in the Agreement, concerning any aspect of his employment. (*See* Agreement, ¶ 5.)

40. In bringing such suit and raising such claims, Lopez is accordingly in patent breach of his covenant not to sue, and Plaintiffs have assuredly been damaged thereby.

41. The Agreement, by its plain terms, forecloses the Federal Action, and Plaintiff is liable to Plaintiffs for damages for such breach, including "reimburs[ing] [Plaintiffs] for all legal fees [and] costs" associated not only with their defense in the Federal Action but in also to their reasonable costs and attorneys' fees in prosecuting the instant claim for breach. (*See* Agreement, ¶ 4.)

## FIRST CAUSE OF ACTION

**Seeking Declaratory Judgment that the Agreement Bars
Lopez's Claims in the Federal Action**

42. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 41 of the Complaint as if fully set forth herein at length.

43. The Agreement constitutes a valid written contract, made for valid consideration and governed by New York law, creating binding and enforceable contractual obligations.

44. In the Agreement, Lopez expressly agreed to release and discharges Lafayette-Boynton "and its parent corporations, subsidiaries, divisions, and affiliated entities as well as each of the foregoing's respective officers, directors, agents, principals, members, shareholders, partners, employees, attorneys, administrators, heirs, successors and assigns," including Nelson Management and LBPR, from "all actions, causes of action, suits, debts, dues, sums of money, […] claims, and demands whatsoever in law, admiralty, or equity, […] by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this ["Agreement"]." (Agreement, ¶ 2.)

45. The release executed by Lopez expressly "includes, but is not limited to, […] *any and all claims arising out of or in connection with Lopez's employment with the Company*." (Agreement, ¶ 2.)

46. Lopez voluntarily and knowingly executed the Agreement and agreed to be bound by its terms, including the release provisions contained therein.

47. Plaintiffs fulfilled their obligations under the Agreement.

48. To the extent the Federal Action plainly raises claims arising out of and in connection with Lopez's employment with Lafayette-Boynton, the release provisions in the Agreement expressly foreclose the Federal Action and bar all claims raised therein.

49. Plaintiffs therefore seek a declaratory judgment that the Agreement and its release provisions are valid and binding upon Lopez, and that Lopez has validly released the claims presented in the Federal Action.

- 11 -

## SECOND CAUSE OF ACTION

### Seeking Compensatory and Punitive Damages for Lopez's Breach of the Agreement's Covenant Not to Sue

50. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 49 of the Complaint as if fully set forth herein at length.

51. The Agreement constitutes a valid and binding written contract, made for valid consideration and governed by New York law, creating binding and enforceable contractual obligations.

52. In the Agreement, Lopez expressly covenanted not to institute any action, file suit or seek damages against Plaintiffs, whether relating to his termination grievance or for any other reason. (Agreement, ¶ 5.)

53. Lopez further agreed that he shall not accept any award or settlement with respect to any action barred by his covenant not to sue. (Agreement, ¶ 5.)

54. Lopez further expressly agreed that, should he institute any claim or action against any of the releasees identified in the Agreement, including all Plaintiffs in this action, his claims shall be dismissed upon presentation of the Agreement. (Agreement, ¶ 5.)

55. Lopez further agreed that "in the event [he] institutes […] any claim or action against the Releasees," he "shall reimburse the Releasees for all legal fees, costs, and disbursements they incur in defending and obtaining the dismissal of such claims instituted with Lopez's consent." (Agreement, ¶ 5.)

56. As expressly provided in the Agreement, Lopez promised that, if he "engages in conduct prohibited by [*inter alia*] [P]aragraph[] [5], […] Lopez will be liable to the Employer for monetary damages and other relief, including, but not limited to costs and attorney's fees." (Agreement, ¶ 9.)

57. Lopez voluntarily and knowingly executed the Agreement and agreed to be bound by its terms, including the covenant not to sue contained therein.

58. Plaintiffs fulfilled their obligations under the Agreement.

59. In instituting the Federal Action and suing Plaintiffs, Lopez has unjustifiably and inexcusably breached, and continues to breach, the covenant not to sue set forth in Paragraph 5 of the Agreement.

60. The Federal Action was undertaken in patent breach of his covenant not to sue and in bad faith.

61. As a direct and proximate result of Lopez's unequivocal breach of his covenant not to sue, Plaintiffs have incurred damages in the amount of their costs, expenses and disbursements in defending the claims asserted in the Federal action, and, further, in their costs, expenses and disbursements in prosecuting this action.

62. Plaintiffs are also entitled to punitive damages because Lopez's conduct was willful, knowing, egregious and conducted in patent bad faith.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order and/or Judgment in Plaintiffs' favor and against Lopez, as follows:

a. Declaring that the Agreement is valid, binding, and that Lopez properly released all claims he has sought to pursue in the Federal Action as against all Plaintiffs herein;

b. Granting Plaintiffs judgment on their claims for Lopez's breach of the Agreement's covenant not to sue;

c. Awarding Plaintiffs actual, compensatory damages in an amount to be determined following a trial of this matter, but at this point reasonably believed by Plaintiffs to exceed

$75,000.00, including, but not limited to, their attorneys' fees, costs and expenses incurred in connection with defending the Federal Action and in prosecuting the instant claim;

    d. Awarding Plaintiffs punitive damages in connection with Lopez's willful, knowing and bad faith breach of his covenant not to sue, in an amount to be determined following a trial of this matter;

    e. Granting Plaintiffs pre- and post-judgment interest; and

    f. Granting Plaintiffs such additional and further relief as this Court deems just and equitable.

Dated: New York, New York   CLIFTON BUDD & DeMARIA, LLP
    August 27, 2021     *Attorneys for Plaintiffs*

               By: Stephen P. Pischl, Esq.
                  350 Fifth Avenue 61st Floor
                  New York, New York 10118
                  (212) 687-7410 (tel)
                  sppischl@cbdm.com

FILED: NEW YORK COUNTY CLERK 08/27/2021 12:36 PM                    INDEX NO. 655209/2021
NYSCEF DOC. NO. 2                                                     RECEIVED NYSCEF: 08/27/2021

Case 1:21-cv-07997-JMF   Document 1-1   Filed 09/26/21   Page 14 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

LAFAYETTE-BOYNTON APARTMENT CORP.,
NELSON MANAGEMENT GROUP, LTD., and
LBPR SERVICES, LLC

Index No.

**VERIFICATION**

Plaintiffs,

-vs.-

DAVID LOPEZ,

Defendant.
------------------------------------------------------------------x

        STEPHEN P. PISCHL, an attorney duly authorized to practice before the Courts of New York, verifies, under penalty of perjury, that:

        1.    I am counsel with the law firm of Clifton Budd & DeMaria, LLP, attorneys for Plaintiffs, Lafayette-Boynton Apartment Corp. ("Lafayette-Boynton"), Nelson Management Group, Ltd. ("Nelson Management"), and LBPR Services, LLC ("LBPR," and, collectively with Lafayette-Boynton and Nelson Management, "Plaintiffs"), Plaintiffs in the above-captioned matter.

        2.    I make this verification because Plaintiffs are corporations whose offices are outside New York County.

        3.    I have reviewed the annexed Verified Complaint, and the contents thereof. I have knowledge that the information contained in the foregoing document is true, except as to the matters which were provided by others based on their personal knowledge or made upon information and belief, and, as to those matters, I believe them to be true.

4. The source of my information and the basis of my belief are my communications with Plaintiffs' officers and employees and my review of the Plaintiffs' books and records kept in the ordinary course of business.

Dated:   New York, New York
         August 27, 2021

_____
STEPHEN P. PISCHL